Filed 4/19/16  P. v. Michaud CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE, | C072507 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF1293) |
| v. | |
| RHONDA MARIE MICHAUD, | |
| Defendant and Appellant. | |

Defendant Rhonda Marie Michaud appeals from a judgment imposed after her probation was revoked and she was sentenced to local prison for 16 months.  She contends the trial court (1) erred in revoking her probation, (2) imposed a penalty assessment pursuant to Government Code section 76000 in excess of that permitted by law, and (3) erred in failing to award her three additional days of presentence credit.  The first contention lacks merit.  The second contention fails because defendant did not establish an adequate appellate record and we must presume the trial court employed the correct formula in assessing the penalty assessments.  The People concede the third contention and we agree.  Because defendant had already completed her sentence before

1

briefing in this appeal began, we remand to the trial court with directions to credit her $30 per day and allocate that credit against her fines and penalty assessments in compliance with Penal Code section 2900.5, subdivision (a).[1]

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant entered a negotiated plea of no contest to possessing methamphetamine for sale and was granted probation, conditioned on her serving 365 days in jail, among other things. Other conditions of her probation included participation in and successful completion of a six- to eighteen-month residential drug treatment program to be recommended by the probation department, and participation in psychiatric or psychological counseling, as directed by the probation department.

Within two months of defendant's plea agreement, however, the probation department wrote a letter to the court, asking that defendant's probation be modified to 365 days in jail, with probation to terminate thereafter, because defendant's mental health status renders her incapable of complying with the conditions of her probation. The letter stated: "Since the defendant has been in custody, it has become apparent her mental health issues are more significant than first thought. A mental health counselor at the jail has attempted to speak with her, but she refuses all attempts to help her. She has continued to display a lack of understanding of the court process and the consequences for failing to comply with court orders."

The letter continued: "The defendant has filed numerous grievances against jail staff ranging from their refusal to open investigations into a stolen car or that arresting officers stole money from her. She has called the probation department obsessively from jail, complaining that she wants to sue the sheriff's department for stealing her money, she wants to challenge the probable cause that led to her arrest, she claims she wasn't

_____

[1] Undesignated section references are to the Penal Code in effect at the time of the charged offenses.

2

adequately represented and believes the entire court process was unfair. Despite the probation officer's attempts to redirect her, the defendant fixates on getting out of jail so she can be with her father and properly bury her mother. The probation officer has tried to explain that probation has no ability to address her various grievances and that the officer is simply trying to place her into a drug treatment program. The defendant now states, in contradiction to her statements in the presentence report, that she does not need drug treatment and in fact refuses to enter a residential program. Apparently she believes once she completes her jail sentence, her responsibilities to probation and the court will be over. The probation officer has tried to explain this is not the case, but the defendant appears unable to understand. She has also made statements that she will refuse to attend mental health treatment if released from custody."

The trial court conducted a hearing on the probation department's request, at which the prosecutor requested instead that the court find that a grant of probation is no longer a viable option and sentence defendant based on the recommendation contained in the existing presentence probation report. The trial court declined to revoke defendant's probation, noting that defendant had so far only committed an "anticipatory violation of probation," and reminding defendant that if she fails to follow the court's orders, "meaning when probation directs you to a program, you go to it," probation will be revoked and she could face up to three years in custody.

Less than three months later, the probation department petitioned to revoke defendant's probation, on the grounds defendant: (1) twice met with the probation officer to locate a residential drug treatment program to fulfill the probation condition that defendant complete such a program, but defendant denied she had a drug problem and refused to enter any drug treatment program; and (2) twice refused to meet with the jail staff mental health physician, in violation of the probation condition that she participate in mental health counseling services and follow the treatment plan directed by the mental health staff.

At the contested hearing on the violation of probation petition, defendant's probation officer testified that defendant filled out an application to a Salvation Army drug treatment program, but she wrote on the application form that she was being held in the jail against her will and denied access to legal counsel and medical help. The program director concluded defendant's "ramblings at the end of her application" overrode the other statements on the application and indicated she would not be successful in their program. Thereafter, defendant "adamantly refused to go to any drug treatment program" and told her probation officer she did not have drug problems.

As for defendant's alleged refusal to meet with the jail staff mental health physician, defendant's probation officer testified he met with defendant to refer her to jail mental health services. In that meeting, he gave defendant directives to sign requiring her to comply with counselors and mental health services as directed by the mental health workers, but she refused to sign. The officer arranged for defendant to be assessed by Dr. Zil,[2] but defendant was not told about this specific referral. When urged by jail staff to get up out of bed because "Dr. Zil[] wanted to speak with her," defendant did not move. When jail staff came back to her cell, defendant refused to get up. As jail staff was walking away, defendant said she would go to the appointment. Defendant walked with staff to meet with Dr. Zil, but ultimately refused to meet with the doctor because she had forgotten her glasses.

The trial court found both allegations true and found defendant in violation of her probation. "I think the allegations have been proven. The defendant is not complying with the spirit of the probation order. She's being difficult. She's setting the terms. She's not going to meet with Dr. Zil[] unless she has her glasses. Well, it's not up to her to make that determination. She was given the opportunity. She was told to meet with

---

[2] We follow the parties' spelling of Dr. Zil's last name in their briefing. Dr. Zil's first name does not appear in the record.

the doctor. She should have met with the doctor. . . . And I'm finding she's also in violation of the order that she complete and pay the cost of a 6-to-18-month rehab she was ordered to complete. She put information on the application herself that caused the application to be rejected. She has nobody to blame but herself. . . . Then she indicates to the probation officer she's not going to go to a drug treatment program anyway. There isn't anything more that Probation could do for her. They can't fill it out for her. They can't take her there and make her do the program. She said she's not going to do it. She's not complying with the orders of the Probation Department or the orders of the Court. . . . She's in violation clearly in this matter."

Having determined defendant is not amenable to probation, the trial court sentenced her to serve the low term of 16 months in local prison. (§ 1170, subd. (h)(5)(A).)

## DISCUSSION

### I. Revocation of Probation

Defendant claims the court erred in revoking her probation based on a finding she violated the "spirit of her probation," and the evidence does not support a conclusion she willfully violated any condition of her probation. We disagree with both contentions.

"[S]ection 1203.2,[3] subdivision (a) authorizes a trial court to revoke probation 'if the interests of justice so require and the court, in its judgment, has reason to believe from

---

[3] At all relevant times, section 1203.2, subdivision (a), provides in full: "At any time during the period of supervision of a person (1) released on probation under the care of a probation officer pursuant to this chapter, (2) released on conditional sentence or summary probation not under the care of a probation officer, (3) placed on mandatory supervision pursuant to subparagraph (B) of paragraph (5) of subdivision (h) of Section 1170, (4) subject to revocation of postrelease community supervision pursuant to Section 3455, or (5) subject to revocation of parole supervision pursuant to Section 3000.08, if any probation officer, parole officer, or peace officer has probable cause to believe that the supervised person is violating any term or condition of his or her supervision, the officer may, without warrant or other process and at any time until the final disposition of

5

the report of the probation officer or otherwise that the person has violated any of the conditions of his or her probation . . . .' " (*People v. Jackson* (2005) 134 Cal.App.4th 929, 935; see also *In re Alex U*. (2007) 158 Cal.App.4th 259, 265.) " 'As the language of section 1203.2 would suggest, the determination whether to . . . revoke probation is largely discretionary.' [Citation.] '[T]he facts supporting revocation of probation may be proven by a preponderance of the evidence.' [Citation.] However, the evidence must support a conclusion the probationer's conduct constituted a willful violation of the terms and conditions of probation." (*People v. Galvan* (2007) 155 Cal.App.4th 978, 981-982; see also *People v. O'Connell* (2003) 107 Cal.App.4th 1062, 1066.)

We review a probation revocation decision pursuant to the substantial evidence standard of review and accord great deference to the trial court's decision, bearing in mind that " '[p]robation is not a matter of right but an act of clemency, the granting and revocation of which are entirely within the sound discretion of the trial court. [Citations.]' [Citation.] [¶] 'The discretion of the court to revoke probation is analogous to its power to grant the probation, and the court's discretion will not be disturbed in the absence of a showing of abusive or arbitrary action. [Citations.]' [Citation.] 'Many times circumstances not warranting a conviction may fully justify a court in revoking

the case, rearrest the supervised person and bring him or her before the court or the court may, in its discretion, issue a warrant for his or her rearrest. Upon such rearrest, or upon the issuance of a warrant for rearrest the court may revoke and terminate the supervision of the person if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation or parole officer or otherwise that the person has violated any of the conditions of his or her supervision, has become abandoned to improper associates or a vicious life, or has subsequently committed other offenses, regardless whether he or she has been prosecuted for such offenses. However, the court shall not terminate parole pursuant to this section. Supervision shall not be revoked for failure of a person to make restitution imposed as a condition of supervision unless the court determines that the defendant has willfully failed to pay and has the ability to pay. Restitution shall be consistent with a person's ability to pay. The revocation, summary or otherwise, shall serve to toll the running of the period of supervision."

probation granted on a prior offense. [Citation.]' [Citation.] ' "[O]nly in a very extreme case should an appellate court interfere with the discretion of the trial court in the matter of denying or revoking probation. . . ." ' [Citation.] And the burden of demonstrating an abuse of the trial court's discretion rests squarely on the defendant." (*People v. Urke* (2011) 197 Cal.App.4th 766, 773.)

As a threshold matter, we disagree with defendant's contention that the trial court violated her probation based on a finding that she " '[was] not complying with the *spirit* of the probation order.' " The trial court expressly found that the allegations of the violation of probation petition "have been proven"; defendant is "also in violation of the order" that she complete a drug treatment program; defendant is "not complying with the orders of the Probation Department or the orders of the Court"; and "[s]he's in violation clearly in this matter." These statements are sufficient to constitute the trial court's findings that defendant violated the conditions of her probation within the meaning of section 1203.2.

In any event, "there is no abuse of discretion in revocation where it appears from the record that the accused has violated the terms and conditions of probation." (*People v. Nelson* (1967) 257 Cal.App.2d 282, 285-286.) Here, substantial evidence supports the conclusion that defendant violated the conditions of her probation.

As to the condition defendant participate in and complete a residential drug treatment program, defendant argues on appeal she in fact complied with that condition by submitting an application to the only program offered to her by the probation department. However, the trial court found that defendant intentionally sabotaged this application by writing pleas for help at the end of the application. Not only do we defer to the court's conclusion (see *People v. Urke, supra*, 197 Cal.App.4th at p. 773), but any ambiguity regarding whether defendant intended her application to further her compliance with this condition of probation is eliminated by her express and adamant refusal to go into any drug treatment program.

Nor has defendant shown the trial court abused its discretion in concluding she violated the condition of her probation requiring her to participate in psychiatric or psychological counseling, as directed by the probation department. Probation is "an act of clemency and grace." (*People v. Rodriguez* (1990) 51 Cal.3d 437, 445.) A trial court has very broad discretion in denying and revoking probation and an appellate court interferes with that discretion " 'only in a very extreme case.' " (*Id.* at p. 443.) Such a case does not present itself here.

Defendant argues her actions in refusing to meet with Dr. Zil when she was without her eyeglasses cannot be construed as a violation of probation because the probation order failed to give her notice she was required to meet with the jail's mental health doctor, and she was not informed that meeting with Dr. Zil was connected to a probation condition. But the trial court was also entitled to consider that defendant refused to meet with Dr. Zil after first refusing to sign a directive that she comply with counselors and mental health services to get the psychological treatment which was a condition of her probation. The trial court's decision to revoke probation was not arbitrary. There was no abuse of discretion.

## II. Government Code Section 76000 Penalty Assessment

Defendant challenges the amount of the county penalty assessment levied pursuant to Government Code section 76000 upon the fees imposed pursuant to Health and Safety Code sections 11372.5 and 11372.7. She contends the county penalty assessments should have been $15 on the Health and Safety Code section 11372.5 fee and $45 on the Health and Safety Code section 11372.7 fee. The People respond that defendant has forfeited this claim for failure to object in the trial court and, in any event, the record precludes our determination of whether the amount to be collected under Government Code section 76000 is correct.

Defendant did not forfeit the claim in the trial court by failing to object at sentencing. Nowhere in the presentence probation report, the transcript or minute order

8

of the plea or sentencing proceedings or the original abstract of judgment is there identified a penalty assessment imposed under Government Code section 76000. The assessments were first identified by the trial court when it filed an amended abstract of judgment at the request of defendant's appellate counsel while this appeal was pending.

Section 76000 states in pertinent part, "[T]here shall be levied an additional penalty in the amount of seven dollars ($7) for every ten dollars ($10), or part of ten dollars ($10), upon every fine, penalty, or forfeiture imposed and collected by the courts for all criminal offenses . . . ." (Gov. Code, § 76000, subd. (a)(1).) But subdivision (e) of section 76000 of the Government Code states that "[t]he seven-dollar ($7) additional penalty authorized by subdivision (a) *shall be reduced in each county by the additional penalty amount assessed by the county for the local courthouse construction fund established by* [*Government Code*] *Section 76100 as of January 1, 1998, when the money in that fund is transferred to the state under* [*Government Code*] *Section 70402.* The amount each county shall charge as an additional penalty under this section shall be as follows[,]" and the amount Yuba County is authorized to levy as an additional penalty for every $10 imposed and collected by the trial court as a fine, penalty, or forfeiture for criminal offenses is $3. (Gov. Code, § 76000, subd. (e), italics added.) Based on this, defendant contends her penalty assessment should have been $15 not $35 for the Health and Safety Code section 11372.5 fine and $45 not $105 for the Health and Safety Code section 11372.7 fine. Defendant asks us to correct this purported error and direct the trial court to impose those lower amounts.

However, defendant failed to establish she is entitled to the relief she requests. She failed to provide this court with any proof that the county established a local courthouse construction fund under Government Code section 76000. (Cf. *People v. McCoy* (2007) 156 Cal.App.4th 1246, 1254 [referencing the Los Angeles County Board of Supervisors resolution regarding Gov. Code, § 76000, subd. (a)].) Defendant bears the burden of providing an adequate record affirmatively proving error. In the absence of

9

such proof, we presume the trial court's judgment is correct. "All intendments and presumptions are indulged to support [the trial court's judgment] on matters as to which the record is silent, and error must be affirmatively shown." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) " 'It is a basic presumption indulged in by reviewing courts that the trial court is presumed to have known and applied the correct statutory. . . law in the exercise of its official duties.' " (*Keep Our Mountains Quiet v. County of Santa Clara* (2015) 236 Cal.App.4th 714, 741, citing *People v. Mack* (1986) 178 Cal.App.3d 1026, 1032.)

Thus, in the absence of contrary evidence in the record, we presume that the trial court was aware of the actions of the county served by the court and imposed the $7 for $10 assessment because defendants in that county are not eligible for the reduction in Government Code section 76000, subdivision (e).

### III. Defendant's Presentence Credits

Defendant contends, and the People agree, that the trial court should have awarded defendant 408 total days' presentence credit, rather than 405, as the court ordered.[4] The failure to accurately award presentence custody credits is an unauthorized sentence and

---

[4] Defendant had three separate periods of pretrial incarceration. As the parties note, the calculation of pretrial custody credits begins on the day a defendant is arrested and continues through the end of the presentence local custody, including partial days as complete days. (See *People v. King* (1992) 3 Cal.App.4th 882, 886.) Based on this, defendant and the People agree that defendant should have been awarded an additional day of pretrial custody credit for the first and second periods of incarceration. Both parties point out that defendant was erroneously awarded one day of pretrial custody credit for the third period of incarceration. With the appropriate adjustments, defendant was entitled to 204, not the 203 days of pretrial custody credit the court awarded. As for conduct credit, both parties agree that under the October 2, 2011, enactment of section 4019, defendant was entitled to 204 days of conduct credit instead of the 202 days awarded by the court. The net result is that defendant should have received three days in addition to the 405 days awarded by the trial court.

10

may be corrected at any time. (*In re Ricky H.* (1981) 30 Cal.3d 176, 191; see also § 1170, subd. (d)(1); *People v. Johnson* (2004) 32 Cal.4th 260, 266.)

Defendant says that as of the time she filed her opening brief, she had already served her term of incarceration. In this circumstance, defendant asserts she is entitled to have the excess incarceration credited against certain qualifying fines at a rate of $30 per day, for a total of $90 here. Section 2900.5, subdivision (a), provides in pertinent part: "In all felony and misdemeanor convictions . . . when the defendant has been in custody, . . . all days of custody of the defendant, including days . . . credited to the period of confinement pursuant to Section 4019, . . . shall be credited upon his or her term of imprisonment, *or credited to any fine on a proportional basis*, including, but not limited to, base fines and restitution fines, which may be imposed, at the rate of not less than thirty dollars ($30) per day, or more, in the discretion of the court imposing the sentence." (Italics added.)

The monetary credit "must be applied 'on a proportional basis' [citation]. In other words, each dollar of monetary credit must be used proportionally to reduce the base fine, penalty assessments and restitution fine rather than any one of these categories alone. Thus, if the monetary credit does not eliminate all amounts due, the defendant still owes the remaining amount in each category." (*People v. McGarry* (2002) 96 Cal.App.4th 644, 646, fn. omitted (*McGarry*).) In *McGarry*, this court explained the arithmetic necessary to calculate a proportionate reduction in the base fine, penalty assessments, and restitution fine that had been imposed on the defendant in the case before it. (See *id.* at pp. 648-650.)

Here, the trial court imposed a $240 restitution fine (§ 1202.4), a $240 probation revocation restitution fine (§ 1202.44), a $50 criminal laboratory fee plus penalty assessments for a total of $200 (Health & Saf. Code, § 11372.5), and a $150 drug program fee plus penalty assessments for a total of $600 (Health & Saf. Code, § 11372.7), all of which the parties agree qualify for proportional reduction.

11

Accordingly, this case must be remanded with directions that the trial court use defendant's excess credits to reduce these fines, fees, and associated penalty assessments proportionally as required by section 2900.5, using the methodology set forth *McGarry*, *supra*, 96 Cal.App.4th at pages 648-650.

## DISPOSITION

The judgment is remanded to the trial court with directions to award defendant an additional three days' credit (one day pretrial custody credit and two days' conduct credit) and allocate a $90 monetary credit to the restitution fine, restitution revocation fine, drug lab fee, drug program fee, and all associated penalty assessments proportionally in compliance with section 2900.5.

In all other respects, the judgment is affirmed.


      MURRAY      , J.



We concur:



      BLEASE      , Acting P. J.



      HULL      , J.

12